IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIMOTHY H.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:21-cv-00271 |
| ) | |
| KILOLO KIJAKAZI[2] ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Timothy H. ("Timothy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Timothy argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) assess his mental impairments, and (2) assess his allegations regarding his symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Timothy's Motion for Summary Judgment (Dkt. 17).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Timothy failed to demonstrate that he was disabled under

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Act.³ Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Timothy filed for SSI on March 21, 2019 alleging disability beginning on that date, due to hepatitis C, bipolar disorder, post-traumatic stress disorder (PTSD), anxiety, and depression. R. 17, 175. The state agency denied Timothy's application at the initial and reconsideration levels of administrative review. R. 58–69, 70–81. The relevant period for Timothy's SSI claim is from his March 21, 2019 application date through the ALJ's decision on September 28, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

eligibility requirements, which cannot pre-date the date on which an application was filed). On September 2, 2020, ALJ Thomas Erwin held a hearing to consider Timothy's claim. R. 36–57. Counsel represented Timothy at the hearing, which included testimony from vocational expert Mark Hileman. On September 28, 2020, the ALJ entered his decision analyzing Timothy's claim under the familiar five-step process[4] and denying his claim for SSI benefits. R. 15–30.

The ALJ found that Timothy had not engaged in substantial gainful activity since March 21, 2019, the application date.[5] R. 17. The ALJ determined that Timothy suffered from severe impairments of substance use disorder, depression, anxiety, PTSD, obesity, hepatitis C, and hypertension. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–21. The ALJ found that regarding his mental impairments, Timothy had moderate limitations in interacting with others and concentrating, persisting or maintaining pace, and mild limitations in adapting or managing oneself and in understanding, remembering or applying information. R. 19–21.

The ALJ concluded that Timothy retained the RFC to perform medium work, except that he can have no exposure to unprotected heights. Timothy can have no cooking, food preparation, or personal care type jobs due to hepatitis. He can have no production rate or pace work, defined as assembly line work or work with strict daily quotas. Timothy can have occasional interaction

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Timothy was 40 years old on the application date, making him a younger individual under the Act. R. 28.

with the public, coworkers, and supervisors. R. 21. The ALJ found that Timothy cannot perform any past relevant work, however, Timothy could perform other jobs that exist in significant numbers in the national economy, such as general helper, laundry worker, and marker. R. 29. Thus, the ALJ determined that Timothy was not disabled. R. 30. Timothy appealed the ALJ's decision, and the Appeals Council denied his request for review on March 9, 2021. R. 1–3.

## ANALYSIS

Timothy alleges that the ALJ failed to properly (2) assess his mental impairments, and (2) assess his subjective allegations regarding his symptoms.

**A. Medical History**

1. Treatment History

Timothy had primary care appointments with William Harris, M.D. in 2019 and 2020. On February 4, 2019, Dr. Harris prescribed Timothy medication to address his ankle swelling and renewed his anti-hypertensive medication. R. 307–08. Dr. Harris encouraged Timothy to follow up with New Horizons for treatment of his hepatitis and to continue to visit a psychiatrist for his mental impairments. R. 307.

Timothy visited Dr. Harris on May 1, 2019 and disclosed that he had been using heroin for the previous three weeks. R. 865. Timothy saw Dr. Harris for a medication review on July 5, 2019 and reported that he was using heroin on a regular basis. R. 859. Dr. Harris diagnosed him with chronic hepatitis C, bipolar affective disorder, major depressive disorder, and opioid use disorder, increased his dosage of Zoloft, and encouraged him to continue in the Suboxone clinic and group counseling. R. 858.

Timothy went to Blue Ridge Behavioral Healthcare on May 1, 2019 and reported that he was interested in entering the Suboxone program and resuming psychiatric services. R. 465.

Timothy reported that he was using IV heroin on a daily basis and complained of depressive and anxiety symptoms that included difficulty breathing, restlessness, problems with social interaction, and difficulty focusing. R. 466. Angela Bell, LPC found that Timothy's mental status examination was notable for depressed mood, but that he also had a normal affect and appearance, a calm and cooperative attitude, and fair insight and judgment. R. 467–68. Timothy declined the substance abuse day treatment program, indicating he wanted to help his mother and to find a job instead, and requested the intensive outpatient treatment program. R. 481. Ms. Bell diagnosed Timothy with severe opioid use disorder, mild cannabis use disorder, unspecified trauma related to stress, and unspecified depressive disorder. R. 491. On May 16, 2019, Timothy was discharged from addiction programs at Blue Ridge Behavioral Healthcare because he failed to attend orientation and violated the no-show policy. R. 495.

On May 23, 2019, Timothy saw Malak Iskandar, M.D. for a medication management session and reported that he was "addicted to heroin" and had last used the drug the previous day. R. 975. Dr. Iskandar found that Timothy's mental status examination was unremarkable but diagnosed him with opioid use disorder and benzodiazepine use disorder and started him on suboxone. R. 975–76. Timothy had a follow-up visit with Dr. Iskandar on June 6, 2019, who noted that Timothy's chronic opioid use disorder was stable and recommended biweekly group therapy. R. 971–73. Timothy told Dr. Iskandar on June 20, 2019 that his cravings were manageable and he was not misusing Suboxone. R. 969–70. Timothy reported to Dr. Iskandar that he had relapsed on cannabis in early July 2019 and acknowledged that he would be discharged immediately upon any inappropriate urine drug screens beginning July 11, 2019. R. 967.

Timothy saw Kunal Joshi, M.D. on July 17, 2019, in which the psychiatrist noted that Timothy had not visited since March 2019 and was discharged from the addiction program after he failed a urine drug screen. R. 901. Dr. Joshi noted that Timothy relapsed "multiple times" with opioids and THC, and that his urine drug screen had been positive for opioids, benzodiazepines, and THC. Id. Dr. Joshi diagnosed him with severe opioid use disorder, and continued his Suboxone, Trazodone, Inderal, and Lexapro medications. R. 902. At his July 2019 follow-up visit, Dr. Joshi found that Timothy had fair insight and judgment, but that he was also "moderately worse" than the previous visit. R. 1007–09. Dr. Joshi noted that Timothy tested positive for THC and Dilaudid on July 25, 2019 and positive for morphine, THC, and benzodiazepines at his August 1, 2019 urine drug screen. R. 1012. Dr. Joshi continued Timothy's medications and left them unchanged. R. 1013. Dr. Joshi again noted that Timothy had fair insight and judgment at his August 8, 2019 visit and that his symptoms were better. R. 1016, 1020.

On September 11, 2019, Timothy went to Roanoke Comprehensive Treatment Center for a biopsychosocial assessment. R. 978–96. Timothy acknowledged that he had never been "serious" about prior attempts to reduce or stop his substance use. R. 980. The staff employee noted on the assessment that "Tim is a caring, kind and thoughtful person who has employable skills" and "motivational, [cognitive behavioral therapy] (CBT), and strength base approaches would work well for Tim." R. 992.

In November 2019, Timothy complained about uncontrolled anxiety and difficulty sleeping, so Dr. Harris re-prescribed Seroquel. R. 933. On May 15, 2020, Timothy expressed concerns about his elevated blood pressure readings and maintained that he had refrained from using heroin and other street drugs for several weeks to months. R. 925. Dr. Harris advised

Timothy to check his blood pressure daily for a week. R. 924–25. Timothy complained to Dr. Harris on July 9, 2020 that his anxiety was "very bad." R. 908. He also reported mood swings and problems with anger management and stated that he "smokes weed" in the evening to help calm himself down. Id. Dr. Harris found that Timothy had an anxious affect and appropriate mood, his blood pressure was 138/80, weight was 270 pounds, and BMI was 35.14. R. 910. Dr. Harris diagnosed Timothy with benign hypertension, bipolar affective disorder, unspecified anxiety disorder, and PTSD and prescribed him hypertension and mood stability medications. R. 908.

Timothy saw Gustaf Sylvester-Johnson, NP for a psychiatric diagnostic evaluation on August 5, 2020. R. 998. Timothy reported that he was struggling with mood stability that was exacerbated by worsening anxiety and social phobia, and complained of symptoms that included racing thoughts, procrastination, poor task completion, obsessive worrying, and panic attacks that occur two or three times a month, rapid respiration, physical weakness, lightheadedness, and feeling overwhelmed. R. 998–99. Timothy denied an opioid use relapse but reported that he was using marijuana on a nightly basis for his anxiety. R. 998. Mr. Sylvester-Johnson found that Timothy had an anxious mood, his affect improved to euthymic at the end of the visit, his thought processes were linear, logical, and goal-directed, and he had good insight and judgment. R. 1005. Timothy's diagnoses included mood disorder, hyposomnia/insomnia/sleeplessness associated with anxiety, generalized anxiety disorder, fatigue due to depression, chronic hepatitis C, and high-risk medication use. Id. Mr. Sylvester-Johnson added Topamax to Timothy's medicine regimen to address his mood disorder. R. 1006.

2. Medical Opinion Evidence

On June 11, 2019, David Deaver, Ph.D., a psychological consultant with Disability Determination Service, found that Timothy's anxiety and obsessive-compulsive disorders and depressive, bipolar, and related disorders are severe impairments. R. 62. Dr. Deaver determined that Timothy's mental impairments cause mild limitations in his ability to understand, remember, or apply information and in adapting or managing himself, moderate limitation in interacting with others, and no limitation in his ability to concentrate, persist, or maintain pace. Id. Dr. Deaver found that Timothy's mental impairments cause moderate limitations in his ability to interact appropriately with the general public. R. 65–66. He also found that Timothy is capable of simple/unskilled work with occasional social interaction. R. 66.

On reconsideration, Stephen P. Saxby, Ph.D., a psychological consultant with Disability Determination Service, agreed with Dr. Deaver except that he found that Timothy's mental impairments cause mild limitations in his ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and in adapting or managing himself, and a moderate limitation in interacting with others. R. 75. The ALJ found Drs. Deaver and Saxby's opinions not persuasive because they were less restrictive than warranted by the medical evidence of record. R. 25.

On September 13, 2019, Michael Koch, M.D. a medical consultant with Disability Determination Service, found that Timothy does not have any severe physical impairments. R. 74. The ALJ found Dr. Koch's opinion not persuasive because it was less restrictive than warranted by the medical evidence of record. R. 25.

In a "Patient Injury and Work Status" medical opinion on May 15, 2020, Dr. Harris noted that Timothy would be unable to work for an indeterminate period due to difficulty talking to people, concentrating, focusing, and doing any mental tasks involving others due to his bipolar

disorder, anxiety disorder, and PTSD. R. 904. The ALJ found Dr. Harris's opinion not persuasive because it was not supported by the doctor's own findings. R. 26.

On September 13, 2020, Juanita Haskins, LMHP-R, MA, CSAC, CAADC, LPN wrote a letter which reported that she had seen Timothy twice a month for counseling since September 11, 2019. R. 1023. Ms. Haskins noted that Timothy expressed concerns about his struggles with depression, anxiety, and substance use disorder, and that he was working with Ms. Haskins on maintaining his sobriety and emotional stability to avoid the risk of relapse. Id. In a separate letter the following day, Ms. Haskins also noted that she was unable to comment on Timothy's work-related functionality. R. 1022. The ALJ did not find Ms. Haskin's opinion persuasive because it did not provide any limitations or a RFC. R. 26.

## B. Mental Impairments

Timothy asserts that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P. Pl.'s Br. at 14–21, Dkt. 18. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, he argues that the ALJ failed to properly consider Timothy's moderate limitations in concentration, persistence, and pace and in interacting with coworkers, supervisors, and the public and explain how his RFC findings addressed or accommodated these moderate limitations. Id. at 15. He also argues, the ALJ only addressed the skill level of work and did not address Timothy's ability to sustain work activity over the course of an eight-hour workday. Id.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

9

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826

10

F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitation in concentration, persistence, or pace and interacting with others, Timothy is capable of performing medium work with certain mental limitations. R. 19–21. Specifically, the ALJ explained why Timothy's mental limitations, did not translate into a limitation in the RFC beyond no production rate or pace work and occasional interaction with the public, coworkers, and supervisors. R. 21.

As a preliminary matter, contrary to Timothy's argument, the ALJ adequately supported his finding that Timothy could sustain work activity over the course of an eight-hour workday and accounted for Timothy's moderate impairments in his hypothetical questions to the vocational expert ("VE") and the RFC finding in his ruling. The ALJ asked the VE to consider "a hypothetical individual of the claimant's age, education, and work history. . . Eliminate production rate or pace work which I'll define as having to keep up with an assembly line that's constantly moving or just being a different type of job that has an hourly or daily quotas could be phone calls you have to make, could be objects you have to assemble. And no more than occasional interaction with others public, coworkers, and supervisors." R. 52–53. Substantial evidence supports the ALJ's development of Timothy's RFC. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a

residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

Timothy also asserts that the ALJ failed to address his ability to sustain work over an eight-hour workday, and that the RFC addresses only skill level and not an ability to stay on task. The ALJ explained that despite Timothy's complaints of concentration problems, the evidence on the record reflect that he can maintain concentration and persist. R. 20. The ALJ stated at step three that "this area also considers an individual's ability to sustain an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted number or length of rest periods customarily provided." Id. The ALJ noted that the medical evidence of record shows that Timothy sometimes complained to practitioners of difficulty maintaining concentration, but also reported adequate symptom control from psychiatric medications such as Seroquel, Lamictal, and Topamax. Id. The ALJ also noted that Timothy's mental status examination results show that he had no serious problem completing serial 3s and other calculations. Id. Further, the ALJ reasoned that Timothy's providers did not observe that he was overly distractible or slow when following treatment recommendations. Id. Finally, the ALJ explained that Timothy's reported daily activities, jobs, and hobbies requires some concentration and persistence. Id. The ALJ concluded that Timothy's "problem with concentration was considered in the residual functional capacity with no production rate or pace work, defined as assembly line work or work with strict daily quotas." Id. Thus, the ALJ considered and explained his conclusion that Timothy could sustain work for an eight-hour day.

The ALJ acknowledged Timothy's testimony that due to his mental impairments he has difficulty being around others, isolates himself, and panic attacks two to three times per month.

R. 20, 26. Nevertheless, the ALJ noted that Timothy's allegations were not entirely consistent with the medical evidence of record given that his psychiatric and physical disorders were treated routinely, conservatively, and successfully. R. 26–27. The ALJ also noted that the evidence showed that Timothy was pleasant, friendly, cooperative, and in no distress when he followed treatment recommendations. R. 20. Further, the ALJ noted that Timothy interacted with the public daily when he went grocery shopping for himself and his mother. He also interacted with people while working at his various jobs, such as "under the table" landscaping, construction, and Ruby Tuesday. Id. The ALJ further explained that Timothy lived with and cared for his mother and had good relationships with his family members. Id. After a thorough review of the Timothy's mental health records and treatments, the ALJ concluded that Timothy had a moderate limitation in interacting with others and accommodated this in the RFC finding by limiting him to occasional interaction with the public, coworkers, and supervisors. Id.

Regarding his moderate limitation in concentration, persistence, or pace, the ALJ acknowledged Timothy's hearing testimony that he had difficulty maintaining concentration. R. 20. However, the ALJ reasoned that Timothy's mental status examinations largely revealed that his attention and concentration were intact or good. Id. The ALJ noted that Timothy reported that he collected rocks, read for pleasure, shopped, worked in landscaping and construction, and performed household chores such as preparing meals, laundry, and vacuuming, which the ALJ determined required concentration and persistence. Id. Thus, the ALJ concluded that the record supported no more than a moderate limitation in concentration, persistence, or pace and explained that the RFC restriction to no production rate or pace work, defined as assembly line work or work with strict daily quotes accommodated this limitation. Id. In fact, the ALJ gave Timothy a more restrictive RFC than recommended by the state agency psychologists' as he

13

found their opinions were unpersuasive and less restrictive than the mental evidence of record including Timothy's subjective complaints. R. 26. The ALJ noted that the objective medical evidence showed that at appointments Timothy had normal insight, judgment, concentration, and memory. The more restrictive RFC allows for any limitation Timothy had in this area. Thus, the ALJ properly addressed and accommodated Timothy's symptoms in the mental RFC determination.

Accordingly, substantial evidence supports the ALJ's conclusions regarding Timothy's RFC determination. The ALJ properly detailed Timothy's medical history during the relevant period (R. 22–24), discussed the medical opinion evidence (R. 25–26), and assessed his symptoms (R. 26–28). As such, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637.

### C. Subjective Allegations

Timothy asserts that the ALJ's assessment of his mental impairments is not supported by substantial evidence and consequently, his assessment of the medical evidence to support his conclusion regarding Timothy's allegations is not supported by substantial evidence. Pl.'s Br. at 21–25, Dkt. 18. As discussed above, the ALJ did not ignore the objective evidence in the record related to his mental impairments. Timothy did not identify specific instances where the ALJ ignored evidence or improperly applied the legal standards. Rather, Timothy asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c),

416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Contrary to Timothy's argument, the ALJ's opinion includes a detailed discussion of Timothy's medical history, including his allegations, and the ALJ adequately supported his findings that Timothy's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 26. The ALJ acknowledged Timothy's allegations that he isolated himself, did not like talking to others, had panic attacks two to three times a month, and had concentration problems. Id. The ALJ considered Timothy's testimony including that he did not treat his hepatitis C condition, his hypertension was usually controlled with medication, and

15

his mental symptoms and substance abuse disorder improved with medication. The ALJ also considered that Timothy had no psychiatric admissions in 2019 and 2020 and was discharged from addiction programs due to positive drug screens in 2019. R. 22. The ALJ addressed the objective medical evidence on the record that demonstrated that Timothy's alleged disabling mental and physical impairments were routinely, conservatively, and successfully treated. R. 26–28. The ALJ also noted Timothy's lack of complaint and pursuit of treatment for symptoms related to his alleged impairments, physical examinations with mild or no abnormalities, and normal mental status examinations, except for a depressed or anxious mood and affect. R. 27–28. Thus, the ALJ considered Timothy's subjective complaints and stated that Timothy "has the above residual functional capacity assessment, which is supported by the objective medical evidence of record, the claimant's testimony and reporting of daily activities, and the opinions of the medical and psychiatric professionals." R. 28.

Unlike the ALJ in Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017), the ALJ did not rely on minimal daily activities for the finding of non-disability, but used Timothy's daily activities as a factor in his assessment of Timothy's subjective allegations. See Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) (("the ALJ cited [the claimant's] daily activities for purposes of the credibility determination and *not* as examples of the functions [the claimant] could perform for an entire day." (emphasis added)). The ALJ reviewed Timothy's medical history and his subjective allegations and explained his conclusion that Timothy's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the medical and other evidence in the record. R. 26. The ALJ properly addressed Timothy's reported daily activities of preparing simple meals, doing laundry, vacuuming, grocery shopping, reading, coloring, drawing, and collecting rocks, as a

factor in his assessment of his subjective allegations. R. 27. The ALJ also noted that Timothy worked "under the table" in landscaping and construction jobs in 2019 and 2020 and worked briefly as a cook at Ruby Tuesday in 2019. Id. The ALJ concluded that "[g]iven the complaints of disabling symptoms and limitations, such activities are not limited to the extent one would expect." Id. Thus, the ALJ cited Timothy's daily activities as only one factor supporting his determination that his subjective complaints were not entirely consistent with the evidence of record.

Though Timothy disagrees with the ALJ's analysis and conclusions, he does not identify any material conflicting evidence that the ALJ failed to consider or any material misstatement of the evidence of record. Rather, Timothy simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Timothy's subjective complaints with substantial evidence, and that Timothy can perform work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Timothy's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 1, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge